Good morning, Your Honors. My name is Jeff Topham. Thank you for the opportunity to present Oral Argument. On behalf of Respondent North Mountain Foothills Apartments, LLC, may it please the Court. Your Honors, I'm not an expert on federal administrative agencies. Quite to the contrary, my focus of my practice has largely been on representing employers, like the respondent in this case, some of which who only have a handful of employees, before the National Labor Relations Board as well as other federal agencies. And what has always been difficult to explain to those clients is how a single agency can serve as an investigator of an unfair labor practice, prosecutor of that unfair labor practice, and then adjudicator of that unfair labor practice, while at the same time having the authority to also write the rules of the game through the board's rulemaking authority. So let me make sure I understand your argument in that respect, because as I understand the NLRB's practice, different people are responsible for the prosecution and the adjudication, and there's no overlap. So it's not like in some agencies where the same people are basically involved in both phases, but that, as near as I can tell, is not the case here. There is, while the General Counsel does have certain responsibilities at the board, I do think there is overlap, including at the Regional Director's Office, where individuals are involved in various aspects of the process. But I certainly understand your concerns. And that's one of the arguments, of course, that we're making in addition to the concerns regarding the removal protections, Your Honor. So, counsel, hasn't our circuit already dealt with this issue before? And haven't we found that without more, the combination of investigative and judicial functions doesn't violate due process? I mean, that was our holding in U.S. v. Litton and NLRB v. Aaron Brothers. So what evidence do you have, and where is it in the record, that will overcome there's a presumption, we've given a presumption of honesty and integrity for those serving at these levels in the NLRB? So what evidence can you present to us that says they're not honest, they lack integrity? Your Honor, I absolutely cannot, of course, provide specific evidence. I do want to address the Court's decision in NLRB v. Aaron Brothers, because I don't – in that case, the employer made, as the Court noted, an oblique complaint of lack of due process in the Board's denial of evidentiary hearing on its objections because the Regional Director both exercised investigative and adjudicative responsibilities in connection with the issuance of the complaint. Here, I don't think – I'm going a bit further than that in focusing on the fact that this agency really does it all. And while there are certain divisions amongst the General Counsel and the Board itself, for example, the cases that are – the General Counsel decides to take are cases that it's looking for the Board to make a decision on. And I think those also go to the same concerns relating to the removal protections and the challenges or lack thereof of, you know, the President's right to remove those Board members at will. But on the right of removal, that wasn't an issue in this case, right? There was no pending removal at the time that the Board made its decision in this case. Later on, there was, but that was not – so even assuming arguenda there's a problem there, it's harmless in this case because it didn't occur. There was no pending removal. And I think your question's a good one. I think that if I understand your question, that goes to the causal harm requirement that the Court is looking to address. And I do think in looking at the cases cited to by the Board, and I understand that being the big issue of concern for the Court, likely would be, is if we look at Collins, very different structural – that agency, in that case it was the Fair Housing or the Federal Housing Authority Act, I believe, very different responsibility. What I would say here is, again, looking at what the Board does. What the Board does is issue decisions in unfair labor practices. Those decisions create precedent. I found in looking at those cases, Collins v. Yellen and, I believe, the CFPB v. Cash Call, I don't see that the ultimate in that case, in the Collins case, it was the director of the, I believe, the Federal Housing Authority, has the same level of power. Here the Board issues decisions that create precedent, create precedent that employers have to do. So the impact of those decisions, if there's a consistent constitutional deficiency at the Board, has impacts beyond that, and including in this case, because we're subject to the Board's decisions, a Board that is – Sotomayor, I think you're – maybe I'm misunderstanding, but you seem to be glomming together two different arguments. The argument that you were making a few minutes ago was that the same people, so to speak, the same Board is exercising both rulemaking, both legislative functions, prosecutorial functions, and adjudicative functions. And the problem I see with that is it's all different people because that's the way the NLRB operates. Different people do the prosecution and decide whether or not to prosecute. Different people then adjudicate whether the result was proper or not, if it's appealed. But now you're making the argument that even though the Board, at the time, had not been challenged in its membership by the President, that nevertheless, because they were setting precedents, that somehow that constituted a constitutional problem because their membership was later on challenged? I don't understand that. I believe if the removal issue is a constitutional deficiency, that would persist throughout the composition of the Board. And so if this – any deficient Board is – As I understand – maybe I'm just, again, misunderstanding your argument. The removal issue is whether or not the President has the constitutional right to remove who he wants from the NLRB Board, right? That's correct, Your Honor. Okay. So that only becomes an issue when he seeks to remove someone. And he didn't do that until after the events in this case. Well, but the fact that he could not certainly impacts his ability to do so and impacts the composition of the Board at any point in time would be our argument, Your Honor. You think that the President held back because of what he thought was a mistaken view by a lower court, even though later on he went and got the Supreme Court to agree with him? Well, I would note that this decision was actually decided during the Biden administration. So there was a very different precedent, of course. So, again, my view is more so the fact that the deficient Board and the decisions that they issue have an impact on all employers, including ours, and has caused harm to us by creating these decisions that, in effect, were created by a Board that is constitutionally deficient. Did you raise these arguments at the NLRB? We did not, and I want to address that issue. I appreciate that.  And as you know, the NLRB has argued that we've waived those, and pursuant to Section 10e of the NLRA, which requires employers to bring their exceptions to the Board and says exceptional circumstances. Right. Extraordinary circumstances. Extraordinary. I appreciate that. Thank you. Yeah. That those would be waived. In this case, what we're talking about is constitutional arguments that go to the very structure of the Board. I pointed in our briefs, and I would like to point the Court to that again, is that in Reed v. Engel, this Court considered constitutional arguments not raised before the FAA under a similar statutory provision that provided, quote, no objection to an order of the Board or Secretary of Transportation shall be considered by the Court unless such objections shall have been urged before the Board or Secretary of Transportation or if it was not so urged unless there was reasonable grounds for failure to do so. In reaching the conclusion that those were not waived, this Court noted that a party cannot be required to raise certain constitutional issues directly with the agency when the agency, quote, itself cannot resolve constitutional issues regarding their own structure or statutory authorization. As noted above, while the NLRB, as I haven't mentioned but I intended to, the NLRB in this case, of course, has informed the Court that is no longer pressing the argument in its brief regarding the constitutionality of the removal of the protections for NLRB members. They've taken the position, the administration's taken the position that they are not opposing those arguments, is my understanding. I wonder whether that doesn't, I still want you to answer, I don't want to answer your question, but I wonder whether that alone doesn't deprive us of jurisdiction to hear the claim. If you all are in agreement, I mean, it seems to me that there's no controversy. Well, that's an excellent question. What I would note is the fact that despite that, again, the NLRB at any stage before now, even if we had raised those issues before the Board, would not be in a position to make the determination themselves that they are constitutionally deficient in any way. So like in Reed v. Engel, you know, essentially that argument would have been futile if we made it before the Board. And also, I want to also point to the D.C. Circuit's decision in Knoll-Canning v. NLRB. In that case, that was a case involving the constitutional, or the composition of the Board when there was not a quorum, there was an issue of recess appointments during President Obama's time. And in that case, the D.C. Circuit, on its own, without the NLRB's objection, raised the question of waiver. And in that case, they held that the employer's constitutional challenges to the NLRB's Board's composition created the extraordinary circumstances required by Section 10e. I was going to touch — I want to ask them what they mean by their change in position there. But I wanted to ask you, in your letter — thank you for the letter you sent us on July 9th — you say, in light of the Court's decision in May on the Seventh Amendment issue, Respondent withdraws this argument, meaning you no longer are asserting any Seventh Amendment claim. That's correct. Okay. I appreciate that. Yes, that is correct. In light of the decision on that issue, we are not pursuing that. If it's possible, I'd like to reserve the floor. Yeah, I was going to ask you that. Thank you very much. That's fine. We'll give you 2 minutes, 30 seconds for rebuttal. Thank you. Thank you. Good morning, Your Honors. Good morning. Good morning, colleagues of the Court. I'm Kent Coupe for the National Labor Relations Board, seeking enforcement of the Board's order in full. And I'd like to begin by taking just one moment to provide an overview of the Board's position, because the actual live issues in this case are quite limited. There's numerous uncontested violations found by the Board that this Court should summarily enforce, and the collection of constitutional issues that North Mountain raises are waived. That leaves the Board's finding of unlawful discharge as the only issue that's properly before this House. Assuming we disagree with you on the waiver of the constitutional issues, assuming arguing them, I'm not clear what actual controversies are still before us, even assuming that they weren't waived because they weren't raised below. And does this go to Your Honors and Judge Thomas's question about wanting to talk a little bit about our 28J letter? Yes. Yes. As our 28J letter states, we are no longer pressing our arguments as to the constitutionality of the removal protections enjoyed by Board members and by ALJ. So what does that mean in practical terms? Does that mean that if we have, if the removal argument was not waived by their failure to raise it below, that you then agree that the Board acted unconstitutionally? No, Your Honor. We are not in agreement. We are merely not driving it. And as we also pointed out in our 28J letter, it's not necessary for us to under the clear precedent of the Supreme Court and of this Court. In this Court, under Kaufman v. Kajikazi, under CFPB v. Cash Call, and under Decker-Cole v. Perringer, even in the cases of this Court where it found that removal protections of agency officials were unconstitutional, the failure of the Respondents in those cases to allege causal harm was fatal to their claims. Well, I understand that. So that's why I don't understand quite the practical impact of your concession on your position on this because maybe I'm just totally missing the point here. Well, I am too. If you are, I am as well. You argue first that all these constitutional claims, because they weren't raised below, are waived. We agree with you. That's the end of that.  Assuming we disagree with you, then if they are before us and you agree with any of the constitutional claims that they have made, then you lose. But what I think you just said with respect to the removal issue is there's no causal relationship. So that you're still arguing and you're still preserving fully your argument that even if that removal argument has weight in the abstract, it doesn't matter here because it had no practical impact. Correct? That last part, Your Honor, that is correct. Okay. Now I understand your position. And as you pointed out, because there is no causal connection under this Court and the Supreme Court's clear precedence that I stated before, and where there is no link between the removal provision and the Respondents' case, this Court has repeatedly refused to unwind the agency decision below. As you pointed out, there can be no causal connection between a removal that was effectuated, not frustrated, but an effectuated removal that happened in February of this year. Yeah, after all the facts. Let me ask you, just so I'm clear, how the Board operates. The decision to bring a violation is made ultimately by the General Counsel, is that it? That is correct, Your Honor. To bring a case is under the General Counsel's unreviewable discretion under Section 3D of the Act. And the decision whether or not there has, in fact, been a violation after it's been determined at the lower level that there has, and there's an appeal to the Board, is made by the Board? That is correct. First by the ALJ, and it can be appealed up to the Board. Okay. So there's no commonality between the prosecutorial and the adjudicative function? Precisely, Your Honor. And that speaks to the due process challenge that is brought by North Mountain, that as we've argued, and it seems to maybe have some purchase here, is if it's not waived, then it is clearly foreclosed by the Supreme Court and this Court's precedent, including an Aaron Brothers Corporation, that holds that the combination of prosecutorial, investigative, and adjudicative responsibilities just in the same agency, not necessarily in the same individual, in and of itself, is not a violation of due process. And the amicus, in fact, calls this claim frivolous. Let me get you to take a step back and just talk about the waiver or what you argue is the waiver. And tell me why it would make sense to have someone exhaust before the Board something that the Board really doesn't have expertise to decide. Well, thank you, Your Honor. First of all, the statutory language that Congress put itself in Section 10e of the Act does not include an exception for constitutional claims. And this Court and the Supreme Court have quite consistently recognized that appeals that this applies equally when parties attempt to raise new constitutional claims in front of appellate courts. And even this Court, as recently as Macy's in its January opinion, invoked 10e to hold that a Seventh Amendment challenge was not properly before it. In addition, any argument that North Mountain makes now in its reply brief about meeting extraordinary circumstances was nowhere in its opening brief and, therefore, is not properly before this Court. But even if it were, the decision in Noel Canning about unconstitutional or defective appointment of Board members is quite distinguishable. And this is a point which, in its briefing, North Mountain, and admittedly today, an argument confuses. Any constitutional deficiency destroys the official's authority to act, as I believe what my learned friend earlier said. However, the Supreme Court's precedent and this Court's precedent clearly holds that while a constitutionally defective appointment, appointment, renders an official's acts void ab initio, an unconstitutional removal provision does not affect the authority of the underlying agency officials to act, such as all of the Board members who wrote this opinion, such as the ALJ, who made their findings. And if I can move now to the only finding of the Board that is unchallenged before this Court, which is the unlawful discharge of Mr. Press. Substantial evidence and credibility determinations amply support the Board's finding that North Mountain unlawfully discharged its employee, Jasper Press, for his protected concerted activity of discussing his compensation with his coworkers. In fact, the Board found this discharge unlawfully motivated under two alternative and sufficiently independently sufficient theories. The first is that Press's discussions of his compensation with his coworkers were protected concerted activity. The employer was aware of them, and they terminated him because of them. The credited record evidence also supports the theory that whether or not his conduct was concerted protected activity, the employer believed that it was and terminated him based on that belief. Both of those theories of unlawful motivation are supported by ample record evidence and credibility determinations by the ALJ. And contrary to its contentions, the ALJ weighed that evidence before making these decisions and rejecting not only several different arguments that the discharge was not motivated by unlawful motivation, didn't have an unlawful motivation, but also North Mountain failed to carry its rebuttal burden. And under the Board's long-established framework, that rebuttal burden is to prove that North Mountain would have taken the same exact action, terminating Mr. Press after three days of work, absent its illicit motive. The Board carefully weighed up the evidence before rejecting it. And as this Court has recognized, when it comes to the Board's inferences of motive, such as the unlawful motive here, that the Board has a special expertise in drawing inferences of credibility and motive, and also that its determinations of motive are particularly within the Board's domain. If the panel has no further questions. It appears we have none. Thank you very much. Thank you. We respectfully request that you enforce the Board's order in full. Thank you. Your Honor, I'm just going to touch on the substantive arguments a little bit in the rebuttal based on my colleague's discussion. So we recognize that the Court has traditionally deferred to the Board's factual findings if they are supported by substantial evidence of the record as a whole. We, however, do not believe the Board's findings were supported by substantial evidence, and we want to really focus on two issues in particular. One, the finding that the Respondent engaged in unlawful interrogation. The Board found in this case that one of the owners unlawfully interrogated the charging party, in this case Jasper Press, based on the ALJ's finding that Madison, who was one of the owners, quote, told Press she had heard that employees knew how much he was earning and asked if he knew anything about it. Notably, Press lied in his response, but nonetheless, that single question cannot constitute unlawful interrogation under the Board law. A single question by a supervisor is not unlawful interrogation under the totality of circumstances test adopted by the Board in the Rossmoor case. I also want to focus on this concept of protected concerted activity. Of course, the NLRB's termination allegation and the finding by the Board is predicated on the fact that this Jasper Press engaged in protected concerted activities under Section 7. In his decision, the ALJ found that Northmount unlawfully terminated Press because he engaged in, quote, inherent concerted conduct when he discussed, quote, his compensation package with other employees. What the evidence actually showed is that Press simply bragged about how much he was making. There was no evidence in the record to indicate that he, in fact, acted concertedly. And to suggest that any discussion by an individual, by an employee with other employees about their own pay is protected concerted activity, I think, goes beyond Board case law, which has held that it must be a logical outgrowth of the concerns of a group. And in particular, the NLRB itself has held that a personal gripe, a concern about one's own compensation or terms and conditions of employment are not — is not protected. And that's precisely what the evidence, including what the ALJ and Board found, was the case here. I thank you very much, Your Honor. Thank you. Thank you. We thank both counsel for their helpful arguments in this matter. This case is submitted and our court now stands adjourned. Thank you.
judges: THOMAS, ALBA, Rakoff